## BARNWELL v. MARION.

FORECLOSURE—RESALE—MORTGAGES—REPORT OF SALES.—When under foreclosure the master is instructed to sell so much of the mortgage property in lots as will be necessary to extinguish the mortgage debt, and a number of lots are bid. off by defendant, he cannot require the master to satisfy the mortgage and foreclosure judgment on lots not sold, contemporaneously with his compliance, and the report of the master detailing the acts of the bidder is not a report on sales, but the Court may order a resale of the property, and authorize the master to require payment of cash part of bid before bidding on each lot is closed, and to collect bond of purchaser for credit portion when due, and such order does not conflict with previous order of sale not requiring immediate compliance with bid, and making resale penalty of non-compliance.

Before BENET, J., Charleston, July, 1901.    Affirmed.

Foreclosure by Joseph W. Barnwell, trustee, *et al.,* against Sophia F. S. Marion.    From order of Circuit Court ordering resale, and not accepting proffered compliance of defendant with her bid, she appeals.

*Messrs. Bryan & Bryan,* for appellant, cite: *As to releasing mortgage lien:* 23 Stat., 347.    *Delay in complying, is no ground for resale:* 16 S. C., 496.    *This order conflicts with previous order of sale, and is therefore void:* 29 S. C., 345; 27 S. C., 171; 58 S. C., 482; 32 S. C., 509.

*Messrs. Langdon Cheves* and *Joseph W. Barnwell,* contra, cite: *Master may collect bonds or assign them:* 14 Rich. Eq., 5.    *As to report of sales:* 1 Foster's Fed. Pr., 566; Bail. Eq., 13.    *Requiring deposit of cash at close of bidding cannot be objected to because of chilling bidding:* 32 S. C., 598; Jones on Mtgs., 1635; Speer Eq., 481; Hoffman on Masters in Chancery, 220; Hoffman on Referees, 236.

February 21, 1902.    The opinion of the Court was delivered by

MR. JUSTICE POPE. This is the fifth time this cause has been on appeal to this Court, and we had well hoped that our last decision, affirming the decision of the Circuit Court, wherein decrees were pronounced in favor of the six persons whose rights were protected by the mortgage of lands against the defendant, Mrs. Marion, and also wherein the lands mortgaged by Mrs. Marion to secure said debts should be sold by the master, Mr. G. H. Sass, for the purpose of paying such debts, would forever end the contention of the parties to this action. But now, so it is, here is another appeal from an order made by his Honor, Judge Benet. We will endeavor to patiently examine this new appeal. To understand it, a brief summary of the circumstances out of which it arose will be necessary. Judge Gage, in his decree, which was affirmed in 60 S. C., 314, provided, amongst other things, as follows:

"I have given very careful consideration to the facts, and my conclusions have been reached without misgiving, and my opinion is that the plaintiff is entitled to a foreclosure of the mortgage, and sale of premises to satisfy the debt. At my request, the counsel for plaintiff has prepared a formal order for sale, administration, etc., and I have signed the same and attached it hereto as part of this decree, and plaintiff shall be entitled to any further order at the foot thereof, to execute this decree.

"It is, therefore, hereby ordered, adjudged and decreed, that there is now due and owing (12th January, 1900), to the plaintiff, Joseph W. Barnwell, guardian of the minor children of N. B. Barnwell, the sum of $20,569.84, the bond for $17,000 assigned to him and secured by the mortgage set out in the pleadings; and that said Joseph W. Barnwell, as such guardian, have the right to enter up judgment against the said defendant, Sophia Frances Shepherd Marion, forthwith, for the said sum, with interest from the date hereof.

"And it is further ordered, adjudged and decreed, that there is now due to the plaintiff, Ann Josepha Wilson, the

sum of $8,285.65 upon the bond for $8,666.67, assigned to her and secured by said mortgage, and that said plaintiff, Ann Josepha Wilson, have the right to enter up judgment against the said defendant forthwith for the said sum, with interest from the date hereof, the said sum herein adjudged to be due to said Ann Josepha Wilson, being the whole amount of the principal and interest now due upon the said bond so assigned to her, less the sum of $2,193.92, assigned by her to William E. Holmes, and to be reserved and retained by the master, as hereinafter ordered.

"And it is further ordered, adjudged and decreed, that there is due and owing to said Joseph W. Barnwell, individually, the sum of $12,492.10, upon the bond originally assigned to S. L. Howard and Joseph W. Barnwell, as trustees of Anna K. Walker and child, and since assigned to said Joseph W. Barnwell, individually, and upon the bond for $3,000, originally assigned to Ellen F. Hayne, and since assigned to said Joseph W. Barnwell, individually, and upon the bond for $400, originally assigned to him. All of the said bonds being secured by said mortgage, and that said Joseph W. Barnwell, individually, have the right to enter up judgment against the said defendant forthwith, for the said sum herein adjudged to be due him, with interest from the date hereof.

"And it is further ordered, adjudged and decreed, that there is now due and owing to said Joseph W. Barnwell, agent, upon the bond for $4,000 assigned to him and secured by said mortgage, the sum of $4,835.53, and that said Joseph W. Barnwell, agent, have the right to enter up judgment against the said defendant forthwith for the said sum, with interest from the date hereof.

"And it is further ordered, adjudged and decreed, that there is now due to said Joseph W. Barnwell, as trustee under the said mortgage, the sum of $1,499.23, for the taxes paid by him upon the mortgaged property, as set forth in the complaint, for the year 1897, and that there is due to said trustee, as counsel fee for plaintiffs' attorney, Langdon

Cheves, Esq., the sum of $2,418.95, being five per cent. of the amount involved—that is to say, upon the bonds secured by said mortgage, and that there is now due to the said Joseph W. Barnwell, as trustee, under said mortgage, as commission upon the sum of $1,312.49 received and paid out by him for the taxes of 1897, mentioned in the complaint of 1897, the sum of $26.24.

"And it is further ordered, adjudged and decreed, that there is now due on the bond originally assigned to Ann J. Wilson, the sum of $2,193.92, which sum is secured by said mortgage, and has been assigned by said Ann J. Wilson to William E. Holmes.

"And it is further ordered, adjudged and decreed, that in case the defendant do not pay the said sums herein adjudged to be due to the said plaintiffs, respectively, on or before the 1st day of March, A. D. 1902, then the real estate described in the pleadings, and mortgaged to secure the said bonds, be sold by and under the direction of G. H. Sass, Esq., one of the masters of this Court, in parcels, in the manner hereinafter directed, to wit: At public outcry, at or near the old postoffice, in the city of Charleston, in said State, after advertisement of the same at least once a week for three successive weeks, in at least one of the newspapers published in said city, on such day as counsel for plaintiffs and defendant may, in writing, agree to appoint, notifying said master of such days, and failing such appointment before the 5th day of March, in said last mentioned year, then upon such day thereafter as the master may think proper, upon the following terms: One-third cash, the residue in one and two years, secured by bond or bonds of the purchaser or purchasers and mortgage of the premises sold, with interest from the day of sale, payable annually, the buildings erected or to be erected on said premises to be insured, and the policy assigned to the master, or to assignee or assignees of the bonds for the purchase money, the purchaser or purchasers to pay all taxes for the fiscal year 1900; in case a sale take place during the said year, or in case a sale should not take place till after

29—62

said year, then all taxes payable after the day of sale, the purchaser or purchaser to pay the master for papers, and the revenue stamp thereon, and to have the privilege of paying all cash, with interest on the whole purchase money from the day of sale.

"And it is further ordered, adjudged and decreed, that in case the purchaser or purchasers at such sale neglect or refuse to comply with the terms of sale within thirty days from the day of sale, then said master shall have authority to advertise the said property purchased by him or them for sale, and to sell the same at purchaser's risk on same terms as are prescribed for the original sale, after ten days' advertisement.

"And it is further ordered, adjudged and decreed, that in case the master shall deem it proper, he may advertise the said mortgaged lands for sale, or any part thereof, upon different days, and in such parcels as he may think will secure the best prices for the said lands; and that in case he be of the opinion that a favorable sale cannot be made upon any day fixed by him, either with or without the consent of counsel, said master is authorized to change day of sale, and to advertise the property for sale upon such other day as he may think of most advantage to the interests of the parties to this cause interested in said land; and that with the consent of the attorneys for plaintiffs' and defendant, he shall have power to offer for sale and to sell, from time to time, any or all parts of the said mortgaged lands at private sale, either with or without advertisement, and upon such terms as may be agreed upon by the said attorneys; and in case the said attorneys shall agree thereto, may secure the service of a broker or real estate agent to assist in such sales, the compensation of such broker to be fixed by the consent of the attorneys in the cause.

"And it is further ordered, adjudged and decreed, that from the proceeds of sale the master do pay the expenses of sale and the costs of these proceedings, and plaintiffs' disbursements, and any disbursements of defendant properly

chargeable against the proceeds of sale; and then any taxes a lien on the mortgaged premises not payable by the purchaser or purchasers at said sale; and then to said Joseph W. Barnwell, guardian, Ann Josepha Wilson and Joseph W. Barnwell, individually, and as agent, and as trustee, the sums herein decreed to be due to them respectively, with interest from the date hereof, reserving from the proceeds of sale the sum of $2,193.92, with interest from the date hereof, being part of the bond assigned to Ann Josepha Wilson, and by her assigned to William E. Holmes, subject to the further order of this Court: *Provided, however,* That the said sums herein decreed to be due to the said Joseph W. Barnwell, guardian, and to said Joseph W. Barnwell, agent, shall be paid in full, before any payment is made to said Joseph W. Barnwell, individually, from said proceeds of sale; and that the sum herein decreed to be due to said trustee as counsel fee for plaintiffs' attorney shall not be paid until the payments herein decreed to be made to Joseph W. Barnwell, guardian, Ann Josepha Wilson and Joseph W. Barnwell, agent, and individually, and as trustee on account of the taxes paid by him for the year 1897, be paid in full; and that no part of the commissions herein directed to be paid to said trustee shall be paid to him until all other payments herein ordered shall be made in full.

"And it is further ordered, adjudged and decreed, that the master do reserve from the proceeds of sale, before paying such counsel fees and commissions, the sum of $1,433.58, which is the amount, with interest, which it appears by the testimony was paid by said trustee for taxes for the year 1898 under the terms of said mortgage, and the master is directed to hold the same subject to the further order of this Court.

"And it is further ordered, adjudged and decreed, that the said master likewise reserve the sum of $27.04, trustee's commissions upon said payment of taxes, subject to the further order of this Court.

"And it is further ordered, adjudged and decreed, that

in case there shall be a surplus, after making the payments
herein ordered, then the master do hold the same subject to
the further order of this Court; that the master do make title
deed or title deeds to the purchasers at such sales, upon their
complying with the terms of sale, and that upon the produc-
tion of such deed or deeds, he or they be let into possession
of the premises; that at such sales any party to the cause be
allowed to bid; that the defendant, and all persons claiming
under her since the commencement of this action, be barred
and forever foreclosed of all equity of redemption or other
interest in the mortgaged premises."

The master, George H. Sass, Esq., in obedience to the
foregoing, offered the lands for sale on the 23d day of May,
1901, and certain lots at the price of $66,000 were knocked
down to Mrs. Sophia F. S. Marion, the defendant. The
sale was not complied with. The facts and circumstances
attending said attempted sale and following thereafter are
embodied in the report of said master, G. H. Sass, Esq.:

"To the Honorable, the presiding Judge: I respectfully
report that in accordance with the judgment and decree in
the above cause, filed February 7th, 1900, and affirmed on
appeal by the Supreme Court, I offered for sale by public
auction, after due advertisement, on Thursday, the 23d day
of May, 1901, at 11 o'clock A. M., at the old postoffice, in
the city of Charleston, the mortgaged premises described in
said decree, in separate lots, according to the plat of the
same made by Simons & Holmes, surveyors, on the 17th day
of August, 1892, and recorded in R. M. C., Charleston
County, in plat book B, page —.

"Before the sale was begun, Mr. Julian Fishburne ap-
peared at the place of auction, and read the following notice:
'Mrs. Sophia H. M. Fishburne gives notice that she claims
that under the will of her grand-mother, Mrs. Sophia F. S.
Wilson, she is entitled to a right in remainder to one-half
undivided interest in the whole property exposed for sale this
day by Master G. H. Sass, in the case of Joseph W. Barn-
well, trustee, *et al.*, against Sophia F. S. Marion, and upon

the death of her said mother, Mrs. Sophia F. S. Marion, she will claim possession of it.    She will recognize only that the life interest of her mother, Mrs. Sophia F. S. Marion, the life tenant, is sold under these proceedings.    (Signed) Sophia H. M. Fishburne, Julian Fishburne, agent.'

"There was a good attendance at the sale, and in my opinion, under ordinary circumstances, there would have been much competition among bidders, and fair prices would have been obtained for the lots.    But as soon as the first lot was put up, Mr. Julian Fishburne, the same person who had given the aforesaid notice, bid for it the sum of $1,000. There was no other bid, and the lot was knocked down, he giving as the purchaser Mrs. S. F. S. Marion, the defaulting mortgagor.    The same course was pursued by him as to the rest of the lots offered, no other bids being made.    The said lots were, therefore, knocked down as follows :"

Then follows by items a memoranda of the lots knocked down, in substance as follows :

Block A, nine lots at $1,000 each.

Nine lots in block B, at $1,000 each.

In block C, four lots at $1,000 each, and four at $3,000 each.

In block D, six lots at $2,000 each, and six lots at $1,000 each.

In block E, eighteen lots at $1,000 each.

"At this point the total of said bids, aggregating the sum of $66,000, and the estimated debt and costs being about $64,000, the said sale was stopped by the master, at the instance of Mr. Fishburne, the agent of Mrs. Marion, and the balance of the 213 lots were not offered for sale.

"On the 11th day of June, 1901, no settlement having been made by the purchaser, the following letter was written by the master to Mrs. Marion, and mailed to her on the same day : 'Mrs. Sophia F. S. Marion, Summerville, S. C.    Dear Madam : At the master's sale in this case, made on the 23d day of May, 1901, the lots contained in blocks A, B, C, D and E, under the decree in this cause, were knocked down

to you, the purchase money of said lots aggregating the sum
of $66,000.    Please inform me when you will be ready to
comply with the said bids; I have heard nothing from you
since the said sale was made.    Yours, respectfully, G. H.
Sass, Master.'

"On June 20th, the following letter was received from
Messrs. Bryan & Bryan: 'Mr. G. H. Sass, Master, Charles-
ton, S. C.    Dear Sir: Mrs. Sophia F. S. Marion has referred
to us your letter of the 11th inst., in which you say, "please
inform me when you will be ready to comply with the said
bid."    Mrs. Marion states that she is ready to comply as
soon as the mortgage and judgment, covering the unsold
portion of the lots, are released and satisfied.    And at her
request we ask that you name a day and hour when, contem-
poraneously with the compliance by her with her bid, you
will satisfy the judgment and mortgage now of record.    It
is necessary to utilize the unsold portion of her property to
enable her to comply.    Your immediate attention will oblige,
yours very truly, (Signed) Bryan & Bryan.'

"To which the following reply was sent: 'Dear Sirs: In
reply to your letter of the 19th inst., received yesterday, I
beg to say that I have no power under the decree herein to
satisfy the judgment and mortgage referred to, as you re-
quest.    All that I can do is to receive the compliance of the
purchaser with her bid, and thereupon to deliver to her
conveyances of the premises sold.    As soon as this is done,
I will at once take up with you any other matters pertaining
to the case.    Allow me to call your attention to the fact that
the thirty days limited by the decree for the compliance of
the purchaser with the terms of sale will expire on July 24th,
1901.    Yours respectfully, (Signed) G. H. Sass, Master.'

"To this letter Messrs. Bryan & Bryan replied as follows:
'Mr. G. H. Sass, Master, Charleston, S. C.    Dear Sir: In
reply to your letter of the 21st inst., received this day, inas-
much as you take the position that you have no power to act
in the premises, we request, on behalf of Mrs. Sophia F. S.
Marion, purchaser, that you forthwith make a report of the

sale, and the offer of compliance as made by Mrs. Sophia F. S. Marion, purchaser, to the Court, for the action of the Court. Yours very truly, (Signed) Bryan & Bryan.'

"It appearing, therefore, that the purchaser is not prepared to comply without requiring action on the part of the master, which he has no power to take under the decree, I now report the matter to the Court for its further instructions.

"It is proper that I should say here that the thirty days limited by the decree for the compliance by the purchaser with the terms of sale having now expired, I might, under the authority given me in said decree, have proceeded to resell the property. In my judgment, a sale at this period would not be disadvantageous, as the establishment of the naval station in Charleston, and the near approach of the Exposition, will doubtless have an effect in advancing the value of real estate in the upper portion of the city. But inasmuch as there is no provision in the present decree for securing any bids, it would not be advisable, in my judgment, to proceed to resell thereunder without some modification of the terms, as it might result in the same complication which now exists.

"I would, therefore, recommend, in case the Court should order a resale, that provision be made in the decree authorizing the master to require the deposit with him of the cash part of the purchase money, or a certified check therefor, before closing the bidding on each piece.

"I would also call the attention of the Court to the fact that the city sheriff and the county sheriff are pressing for payment of overdue taxes upon the mortgaged property, and have been induced to stay their hands upon the promise of an early sale under the order of the Court. All of which is respectfully submitted."

"On June 29th, 1901, the plaintiff served upon the defendant the following notice (case stated) : 'To Messrs. Bryan & Bryan, defendant's attorneys: Please take notice that on the opening of the Court of Common Pleas for the

trial of causes upon calendar or docket No. 2, we will press for a hearing upon and confirmation of the master's report in the above cause, filed on June 24th, 1901; and, further, upon the *whole record* in the case for an order of resale (owing to the failure of the defendant, Mrs. Marion, to comply with the terms of sale), and that in such order of resale we shall ask that the Court provide that the master be authorized to require the deposit with him of the cash part of the purchase money, or a certified check therefor, before closing the bidding on each piece. Respectfully, (Signed) Langdon Cheves, Joseph W. Barnwell, plaintiffs' attorneys.'

"On June 28, defendant served following notice (case stated) : 'To Messrs. Langdon Cheves and Joseph W. Barnwell, plaintiff's attorneys: Please take notice that on the record and the master's report, filed herein, on June 24th, 1901, we shall, on the opening of the Court of Common Pleas, next ensuing, move the Court of Common Pleas for an order confirming the sale as reported by the master, and directing the master to accept the offer of compliance made by Sophia F. S. Marion, purchaser, and directing the proper officers of the Court, cotemporaneously with such compliance by the purchaser, to satisfy the recorded mortgage and judgment as required by law. Bryan & Bryan, attorneys for Sophia F. S. Marion, defendant, purchaser.'

"On the 2d day of July, the plaintiffs served upon the defendant the following additional notice (case stated) : 'Messrs. Bryan & Bryan, defendant's attorneys: Please take notice that upon the hearing of the motion for resale of the mortgaged premises, lately offered for sale by the master in the above case, the plaintiff will, in addition to the record in the cause, make use of the following: (1) Affidavit of Joseph W. Barnwell, hereto annexed. (2) Certificate of clerk of Court of Common Pleas of Charleston County as to judgments against defendant unsatisfied, and records of the cases in which said judgments were recovered. Respectfully, (Signed) Joseph W. Barnwell, Langdon Cheves, plaintiffs' attorneys.' "

The affidavit and certificate are as follows:

"Personally appeared before me, Joseph W. Barnwell, who, being duly sworn, says that he is one of the plaintiffs in the case of Barnwell, trustee, *et al., v.* Marion, mentioned in the foregoing notice, and also of counsel in the said cause; that upon the filing by the Supreme Court of the decision in the fourth appeal in the said case, affirming the decree of sale, the attorneys for plaintiffs in the said cause addressed and served upon Messrs. Bryan & Bryan, defendant's attorneys in said cause, the letter of which the following is a copy: 'April 25th, 1901. Messrs. Bryan & Bryan, Broad street, City. Dear Sirs: As the Supreme Court has affirmed the Circuit decree in the case of Barnwell, tr., *v.* Marion, and the *remittitur* will soon be sent down, we think it proper that we should suggest to you an agreement upon a day of sale of the mortgaged property covered by the decree. We have every reason to believe that the property can best be sold before the expiration of the month of May, and, therefore, respectfully ask that you notify us at once whether you are prepared to agree upon a day of sale. Under our construction of the decree, no such agreement is necessary between us before the master can exercise his right to determine the day of sale; but in pursuance of the course which we have endeavored to follow from the beginning, we think it proper to approach you with a view to coming to an agreement, if possible. Yours truly, (Signed) Langdon Cheves, Joseph W. Barnwell. P. S.—Both State and city taxes for the last fiscal year, and the first instalment of the city taxes for the present year, are now due and unpaid, as we presume you know.'

"That in reply to the above letter, defendant's attorneys wrote to the deponent and his associate the letter of which the following is a copy (case stated): 'April 26th, 1901. Messrs. Langdon Cheves and Joseph W. Barnwell, Charleston, S. C. Dear Sirs: We beg to acknowledge receipt of your letter of the 25th inst., in the matter of Barnwell *v.*

Marion, which we have referred to our client for instructions. Yours very truly, (Signed) Bryan & Bryan.'

"That no further answer having been received from defendant's attorneys, and the master having decided to offer the property for sale on the 23d of May, 1901, the defendant's attorneys served upon plaintiffs' attorneys notice of appeal from the decision of the master to the Court of Common Pleas, of record in the cause. That with a view to obtaining the best price for the property possible, deponent wrote to defendant's attorneys the letter of which the following is a copy: 'May 14th, 1901. Messrs. Bryan & Bryan, Broad street, City. Dear Sirs: The master having decided upon the proper day for the sale of the property in the above case, it seems to me that it is the policy of all parties concerned to endeavor to make the property bring as much as possible. Mr. Redding, the auctioneer, thinks that there should be some local mention of the sale, and I am informed by others that it is likely that there will be more active competition, provided that it is known that all parties are interested in having the property bring as much as possible, and that every one is acquiescing in the sale. I write to say that I will be pleased to co-operate with your client or yourselves in any way that will secure the highest possible prices for the property at the coming sale. According to my information and experience, the month of May is a good time for the sale of real estate, and the belief that the naval station and the Exposition will carry up the price of real estate, makes the present month especially a good one for the sale of property. I should think that advertisement in the local columns of the papers should be put in, and possibly copies of the plat distributed, but hesitate to go to the expense of doing this without your concurrence, or that of your client. An early reply will oblige yours truly, (Signed) Joseph W. Barnwell.'

"That to this letter defendant's attorneys made the following reply: 'May 15th, 1901. Joseph W. Barnwell, Esq., Charleston, S. C. Dear Sir: We beg to acknowledge receipt of your letter of the 14th inst., in the matter of Barnwell *v.*

Marion, sale by master 23d May, which we have referred to our client. We beg in this connection to recall that our client has already instructed us to object to and appeal from the decision of the master for the sale of the premises at this time, which she considers disastrous to her interests. Very respectfully, (Signed) Bryan & Bryan.'

"That no further answer was received by deponent from defendant's attorneys, or from defendant; that deponent, with a view to carrying out his desire expressed in the above letters, caused a number of copies of the plat referred to in the mortgage to be made at his own expense, and caused local notices to be inserted in both of the newspapers of the city of Charleston; that the expenses of advertising the property amount to nearly $100; that had the property been sold on the 23d of May, the purchaser, under the terms of sale, would have been required to pay all the taxes due thereafter, amounting to at least $700 for the current year alone; that the city taxes for the year 1900, now in the hands of the city sheriff, amount to $1,208.21, and the State taxes, now in the hands of the sheriff of Charleston County, for the same year, amount to $419.69; that the State and city taxes for the year 1899, paid by this deponent, and not included in the Circuit decree, amount to the sum of $1,380.76, without including the interest thereon; that deponent computes the amount due under the judgments and decree in above case up to May 23d, 1901, the day of sale, to be $63,903.04, including interest, costs, counsel fees, commissions, expenses of sale, and taxes. Joseph W. Barnwell. Sworn to before me this 2d day of July, A. D. 1901. [L. S.] N. B. Barnwell, Notary Public S. C.'

"Certificate of judgments *v.* Sophia F. S. Marion: ·

"Sophia F. S. Marion *ads.* Jos. W. Barnwell, etc.—Judgment No. 21326 for $4,871.79, February 8, 1900. Langdon Cheves, attorney.

"Same *ads.* Same.—Judgment No. 21327 for $8,346.12, February 8, 1900. Langdon Cheves, attorney.

"Same *ads.* Same.—Judgment No. 21328 for $12,584.40, February 8, 1900.   Langdon Cheves, attorney.

"Same *ads.* Same.—Judgment No. 21329 for $20,721.84, February 8, 1900.   Langdon Cheves, attorney.

"Same *ads.* Smythe, Lee & Frost.—Judgment No. 21350 for $2,803.69, May 1, 1900.   Mitchell & Smith, attorneys.

"Same *ads.* Same (in favor of Bryan & Bryan).—Judgment No. 21397 for $1,767.38, December 31, 1900.   Bryan & Bryan, attorneys.

"Same *ads.* Smythe, Lee & Frost *et al.* (in favor of Bryan & Bryan).—Judgment No. 21454 for $497.33, April 30, 1901.   Bryan & Bryan.

"Same *ads.* Smythe, Lee & Frost *et al.* (in favor of Smythe, Lee & Frost).—Judgment No. 21461 for $775.34, May 4, 1901.   Mitchell & Smith, attorneys.

"I, Wm. H. Dunkin, clerk of the Court of General Sessions and Common Pleas for the said county, do hereby certify that upon an examination of the indexes of judgments, I find none unsatisfied against Sophia F. S. Marion, except the eight judgments above stated.   Witness my hand and seal of the Court, this 2d day of July, 1901.   (Official seal.)   Wm. H. Dunkin, Clerk C. C. P. and G. S."

The attorneys for the plaintiff also used before the Circuit Judge at the hearing by him of the master's report so much of the proceedings before the clerk of the Court of Common Pleas when Julian Fishburne and Mrs. Fishburne, his wife, who were testifying before said clerk as the sureties on Mrs. Marion's bond to stay the sale of the mortgaged premises under the Circuit decree of Judge Gage, as tended to show that the defendant, Mrs. Marion, had by deed conveyed to her daughter, Mrs. Fishburne, the remainder of her estate in the mortgaged lands, thus divesting herself of any estate in said lands.   The record of an action touching a half interest in the very lands afterwards mortgaged by Mrs. Sophia F. S. Marion, to which action the said Mrs. Marion, as well as her daughter, Mrs. Fishburne, were parties defendant, was introduced, which showed that Mrs. Fishburne had

interposed a demurrer and which demurrer was sustained, because Mrs. Fishburne had no interest whatsoever in the lands in question in that complaint, and from this judgment no appeal was taken by Mrs. Fishburne. This half interest in the parties plaintiff to that record was afterwards purchased by Mrs. Sophia F. S. Marion at and for the sum of $35,000. Testimony of real estate brokers as to the value of the lands was also submitted.

At the hearing before Judge Benet of the case at bar, he pronounced the following decree (omitting the title of the cause) :

"Hearing the report of Master Sass in this cause, dated the 24th day of June, 1901, together with the motion of the defendant, Sophia F. S. Marion, upon the notice dated the 28th day of June, 1901, for an order confirming 'the sale as reported by the master to accept the offer of compliance made by Sophia F. S. Marion, purchaser, and directing the proper officers of the Court cotemporaneously with said compliance by the purchaser to satisfy the recorded mortgage and judgment, as required by law,' and also hearing the motion of plaintiffs for a resale of the property ordered to be sold in the decree, upon the terms recommended in the report of the master, above mentioned, and after argument of counsel, it is ordered, that the motion of the said defendant, Sophia F. S. Marion, be overruled, on the ground that the master has made no report of sale, but simply a report of certain bids which have not been complied with; and on the further ground that it appearing by the master's report that only a part of the property has been knocked down to or bid off by the defendant, this Court could only direct a release of the lien of the property covered by the lien of the mortgage until the whole property is sold, or the mortgage lien is released by payment.

"And it is further ordered, that the defendant and purchaser, Sophia F. S. Marion, be allowed thirty days from the date of this order within which to comply with the terms of sale; and that in case of such compliance, that said master

do hold any bond and mortgage given by the purchaser for the credit part of the purchase money until the maturity thereof; and in case the same be not paid at maturity, that he proceed to collect the same and pay over the same to plaintiffs, after making the payments provided for in the decree, and reserving in his hands the sums therein provided for; and that in case the proceeds of sale and the amount collected upon said bond be not sufficient to discharge in full the same, then the master do sell so much of the property mortgaged and remaining unsold as will be necessary to discharge the same.

"And it is further ordered, that in case the said defendant and purchaser shall fail to comply with the terms of sale within thirty days, then the master do proceed to resell the property mentioned in the decree upon such days as the attorneys for plaintiff and defendant may agree upon, within ten days after such failure to comply; and in case no such agreement be arrived at and notified in writing to said master within said period of ten days, then said property be resold by said master (within the said period of ten days the said property to be resold by said master) on such day as he may think best, upon the terms prescribed in said decree, save and except that the said master be authorized to require the deposit with him of the cash part of the purchase money, or a certified check therefor, before closing the bidding on each piece or parcel separately offered for sale."

From this order, after due notice, the defendant, Mrs. Sophia F. S. Marion, has appealed to this Court on the following grounds:

"First. The presiding Judge erred in not confirming the sale as reported by the master, and accepting offer of compliance made by the defendant, Sophia F. S. Marion, purchaser, and not directing proper officers of the Court contemporaneously with said compliance by Sophia F. S. Marion, purchaser, to satisfy the recorded mortgage and judgment, as required by law, on the ground that the said Sophia F. S. Marion, defendant, was, by the terms of the decree of fore-

closure, herein allowed to become the purchaser at fore-
closure sale, and as such purchaser was entitled to all the
rights of any other purchaser; among others, that the mort-
gage herein and judgment should be satisfied at the time of
compliance with the sale; and it was the equitable right of
said defendant to have said mortgage and judgment satisfied
simultaneously with her compliance with the terms of sale to
her by the said master, and the Court erred in denying her
this equitable right.

"Second. The Court erred in holding that 'the master
had made no report of sale, but simply reported certain bids
which had not been complied with;' on the ground that the
said report of the master was a report of the sale under
which the rights of defendant, Sophia F. S. Marion, vested,
and the mode and method of compliance was for the Court
to order in view of the equitable rights of Sophia F. S.
Marion in the premises.

"Third. The Court erred in holding that the Court 'could
only direct a release of the lien of the property covered by
the lien of the mortgage until the whole property is sold, or
mortgage lien is released by payment,' on the ground that
by the statute law of the State of South Carolina, after fore-
closure of mortgage, the mortgage must be satisfied by the
officer of the Court as soon as the sale is confirmed by the
Court, and the Court erred in holding otherwise.

"Fourth. The Court erred in directing the master that
'in case of such compliance, said master do hold any bond
and mortgage given by the purchaser for the credit part of
the purchase money until the maturity thereof, and in case
same be not paid at maturity, that he proceed to collect the
same, and pay over the same to plaintiffs,' on the ground
that the said direction and order is in conflict with the terms
of the original order and decree of foreclosure in this cause,
which provides for and contemplates assignment of bonds
for the purchase money by the said master, and not for the
holding thereof and collection of the same at maturity by the
master.

"Fifth. The Court erred in directing the master to collect that 'in case of proceeds of sale and amount collected upon the said bonds, given in compliance, be not sufficient to discharge in full the same, then the master do sell so much of the property mortgaged and remaining unsold as will be necessary to discharge the same,' on the ground that such order and direction conflicts with the original order and decree of foreclosure in this cause, which contemplates and provides for the assignment of said bonds by the master.

"Sixth. The Court erred in directing the 'master, should the purchaser fail to comply with the terms of sale within thirty days, then the master do proceed to resell the property mentioned in the decree,' on the ground that the rights of the defendant purchaser had vested under such bids and offer of compliance by the defendant purchaser, that the Court could not decree a resale, but should allow the defendant purchaser to comply upon the terms as offered by the defendant purchaser.

"Seventh. The Court erred in ordering 'that the said master be authorized to require a deposit with him of the cash part of the purchase money, or certified check therefor, before closing bidding on each piece or parcel separately offered for sale,' on the ground that said order and direction conflicts with the original decree of foreclosure in this cause, wherein the purchaser was not required to comply with the terms of the sale or any part thereof immediately, and wherein the remedy for non-compliance was resale; and on the further ground that said direction and order limits and chills the bidding, and is against the custom of the sale and power of the Court to require a compliance on the part of the purchaser before a reasonable time allowed in examination of the title of the premises so sold."

The plaintiff submitted the following additional grounds in support of Judge Benet's order:

"1. Because it appears from the record in the above case, and the affidavit upon which the order of resale was made, that the whole property offered for sale under the judgment

of foreclosure in the above case, did not exceed in value the amount bid by the defendant, Mrs. S. F. S. Marion, for the 52 lots of the 213 lots mortgaged to the plaintiffs, many of the said lots so bid off being, from their situation, relatively the least valuable of the lots mortgaged, and such bidding by said defendant could not have been made with the intention of complying with the terms of sale.

"2. Because it appears from the evidence produced at the hearing of the motion for resale, upon which said order and decree was granted, that the claim of Mrs. Sophia H. M. Fishburne to a right in remainder to one-half undivided interest in the whole property exposed for sale, and referred to in the master's report, was a frivolous claim, totally without merit, and being made by the agent of the defendant, Mrs. Marion, was manifestly presented for the purpose of chilling the sale, and preventing *bona fide* bidders from bidding thereat.

"3. Because it appears from the said record that the defendant, Mrs. S. F. S. Marion, at the time when said bids were made, was not the owner of any part of the lots not offered for sale by the said master; but that all of said lots, and any surplus of the proceeds of sale remaining over and above the mortgage debt, had been assigned to third parties, and, therefore, the release of the mortgage on the unsold lots would not have benefited the purchaser, Mrs. Marion, or enabled her to comply with the terms of sale."

1. The defendant, Sophie F. S. Marion, when she had her name entered upon the books of the auctioneer, who conducted the sale of the lots attempted to be sold to satisfy the judgment, was in duty bound to comply with the terms of sale by paying in cash the one-third part of the purchase money and by executing her bonds and mortgages for the two-thirds on a credit of one and two years. . Nothing more nor nothing less was her duty. When she sought thereafter to insist upon certain terms which she insisted upon as a condition precedent to her compliance with the terms of sale, viz: that the judgment and the mortgage should be marked

30—62

satisfied, she was plainly seeking to cause the master not to perform his duty, which was plainly ministerial, but to act in a judicial capacity. This officer refused to perform her demands, but gave her a reasonable time in which to perform her duty as purchaser by paying her money and executing her bond for the credit portion of the purchase money, together with a mortgage of the lots so purchased by her at said attempted sale to secure the credit portion of the purchase money of said sales. The defendant seeks to create the impression that a sale of lands under foreclosure by the decree of the Court is fully met by an offer to pay money upon certain conditions she as purchaser may prescribe. A sale includes not only a bid but a compliance with the terms as prescribed by the decree providing for a sale. To say that the master has made a sale to Mrs. Marion, as the purchaser, of certain lots of the land mortgaged, when she has never paid a dollar, or given her bond as purchaser and a mortgage of the premises so bid off by her, is trifling with the decree which authorized a sale by the master. It is true, many persons speak of a sale being made when a bidder has lands knocked down to him by the auctioneer, for usually such a bidder proceeds to pay the purchase money. Technically, however, nothing is entitled to be esteemed a sale except upon the payment and securing the payment of the purchase money. This exception is overruled.

2. We see no error committed by Judge Benet in holding that the master had made no report of sales. As a fact, the master did not, and did not intend to, report what occurred as a sale of the lots referred to in his report. Really, he intended to report to the Court why he had made no sale. That a sale was prevented by the unreasonable and unjustifiable demands of the defendant, Mrs. Marion. No rights had vested in Mrs. Marion under her bids except the right to pay that part of the purchase money in cash and the balance to be secured by her bond and mortgage. No cash was ever tendered by her and no securities offered for the .credit portion. Of course, it was in the power of the Court

to take such steps as might become necessary to carry into effect Judge Gage's decree, which had been affirmed by this Court on appeal therefrom.    Mrs. Marion had no equitable right or rights which were disregarded by Judge Benet. This ground of appeal is overruled.

3.  The Circuit Judge committed no error, as set out in the appellant's third ground of appeal herein.    There is no law, statutory or otherwise, in this State which requires that a release of the lien of a mortgage when being foreclosed by the decree of the Court upon the lands mortgaged until the money is paid, or certainly until all the lands covered by the lien of the mortgage are sold and the proceeds of such sale is realized.    As long as the creditor has unpaid his debt, he reposes in security upon his lien upon the lands mortgaged to him.    Because a debt secured by a mortgage may be small in comparison to the value of lands covered by the mortgage, the mortgage as given is security for the debt.    It is the fault of the debtor if he mortgages lands whose value exceeds by far the debt secured thereby.    It would savor of an interference with the contract between the parties thereto if other than the above rule should prevail.    It is in the power of the debtor, if too much of his estate has been pledged as security for a debt he owes, to pay off his debt as soon as he pleases when its maturity is reached.    The Court should never seem even to be careless in enforcing parties who are able to and do contract.    This third ground of appeal is overruled.

4.  We do not see that such portion of Judge Benet's decretal order appealed from and referred to in the fourth ground of appeal is in conflict with Judge Gage's decree.    It must be remembered that Judge Gage, in the exercise of a wise discretion, gave the plaintiff the right to apply for other orders if necessary to enforce his decree.    There was no order in Judge Gage's decree for an assignment of bonds for the credit portion of the sales made under his decree. If parties are willing to accept such assignments, it can always be done under an application of the creditors there-

for.   His consent is his free choice.   Such choice cannot be compelled.   This fourth ground of appeal is overruled.

5.  So far as the fifth ground of appeal is concerned, we cannot see that the Circuit Judge has erred.   The creditors are entitled to be paid their money.   They have waited long enough for it.   If enough lots are not sold in the first instance to yield enough to pay off the creditors, sell more of the lots, even if the whole number of lots are requisite.   It is no interference with Judge Gage's decree to so order.

6.  The appellant can gain nothing under her sixth ground of appeal.   There existed no objection to an order to resell in case a purchaser failed to comply with the terms of such sale.   If a purchaser fails or refuses to comply with his or her bid at sale made under a decree of Court, he or she, as the case may be, has no just ground of complaint at an order to resell.   The defendant, Mrs. Marion, had earned no right by her bid to disregard and trifle with the rights of other people whose money she had borrowed.   The sixth ground of appeal is overruled.

7.  The Circuit Judge did exactly right when, in view of the circumstances of this case as brought before him in connection with the master's report, he ordered that the amount of the purchase money bid for each lot of land sold by him, so far as the cash portion was concerned, should be paid in cash or by a duly certified check, before closing the bidding on each piece or parcel of land separately offered for sale.   Such an order was demanded by the exigency here developed, and was not in conflict with the letter or spirit of Judge Gage's decree.   The seventh ground of appeal is overruled.

It follows, therefore, that Judge Benet's decretal order must be affirmed in every particular complained of by the defendant, appellant.

This being the case, it is not necessary to consider the additional grounds offered by the plaintiff upon which to reinforce the conclusions reached by Judge Benet.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed, and that the *remittitur* from this

Court be sent down forthwith after the filing of this judgment in this the Supreme Court by the clerk of this Court, to the Circuit Court.

MR. JUSTICE GARY *concurs,* except in so far as the remittitur is ordered to be forthwith sent down.