13614

CAROLINA BAKING CO. v. GEILFUSS *ET AL.*

(168 S. E., 849)

August, 1930.

*Messrs. Carlisle, Brown & Carlisle,* for appellants,

*Messrs. S. R. Watt* and *C. E. Daniel,* for respondent.
April 5, 1933.

The opinion of the Court was delivered by Mr. Justice Bonham.

A. Geilfuss was in business in Spartanburg operating a bakery in his own name, and also as Dixie Cake Company, a corporation of which he was sole owner. He became heavily indebted to Carolina National Bank and Dollar Savings Bank, both of Spartanburg, S. C., to general trade creditors, and was indebted to Life Insurance Company of Virginia, which last-named indebtedness was secured by mortgage. It appearing probable that Geilfuss must go into bankruptcy, negotiations were opened which culminated in Geilfuss executing to R. B. McCanless mortgages of his property for the benefit of all of his creditors. In the meantime both of the banks to which Geilfuss was indebted had failed and were in the hands of receivers, and McCanless was the receiver of the Carolina National Bank. Assisted by the receiver of Dollar Savings Bank, McCanless negotiated a sale to Carolina Baking Company, plaintiff in this action. A friendly suit in equity was begun August 27, 1930, to secure the ratification and approval by the Court of the sale and to direct the distribution of the proceeds. It appears from the complaint that an agreement was entered into between the mortgagees of Geilfuss and the receivers of the two banks to the effect that all creditors of A. Geilfuss and Dixie (Geilfuss) Cake Company holding valid and *bona fide* claims, except the two named banks, should be paid in full out of the purchase price to be paid in by the purchaser and the balance to be paid *pro rata* on the obligations due the two failed banks; in other words, the two failed banks would absorb the loss. It further appeared that this agreement had, on the part of the receivers of the two banks, been approved and the receivers empowered and authorized to complete the transaction by proper orders of the Courts having jurisdiction of them respectively.

In the meantime McCanless was succeeded by J. L. Campbell as receiver of the Carolina National Bank and as trus-

tee of the creditors. The matter was referred to the master, who reported in favor of the consummation of the agreement. Judge S. W. G. Shipp, then presiding in that Circuit, made his decree dated October 7, 1930, in which he approved, ratified and confirmed the agreement of sale and purchase, and directed, *inter alia,* that the purchase price be paid to Leroy Moore, master, and R. B. McCanless, trustee, and they "to disburse the purchase price in payment of all claims of creditors of A. Geilfuss and Dixie Cake Company, either or both, which shall have been filed with and allowed by the Master and approved by the Court pursuant to the provisions of the order calling in creditors, and in accordance with the agreement heretofore approved by the Court, whereby the claims of all creditors, other than the Dollar Savings Bank and the Carolina National Bank, of Spartanburg, shall first be paid in full, and only the residue ratably applied to the obligations held by the receivers of those banks, respectively, subject, however, to the payment first of all past due and unpaid taxes against the property (taxes for 1930, however, against the real estate to be apportioned as of July 1, 1930) ; and next the payment of the costs of this action (including the fee allowed plaintiff's attorneys) ; and next the amount due upon the mortgage to the Life Insurance Company of Virginia." J. L. Campbell was substituted in the stead of R. B. McCanless.

There was no appeal by any one from this decree.

There ensued considerable delay in the payment of the purchase money. Extensions of time were granted, and mode of payment changed by agreement of the parties and order of the resident Judge of the Circuit. The management of the Carolina Baking Company was changed and disagreements arose between the new management and the trustee of the creditors, resulting in litigation which finally culminated in Judge Sease's decree of May 12, 1932, which made alterations in the mode of payment of the purchase money and the manner of its distribution.

June 16, 1932, the trustee sent a written notice to the creditors of A. Geilfuss and Dixie Cake Company, calling their attention to the decree of May 12, and asking that they signify their consent that the two banks be released from their agreement to absorb the loss on claims resulting from the fact that the agreed purchase price was insufficient to pay the debts in full; and that they consent that the trustee pay at once a dividend of 10 per cent. out of the money on hand, and that he be permitted to distribute to creditors other payments as they are made. The notice concludes in these words: "We are therefore asking that you communicate at once to the undersigned your consent to the distribution of the funds on hand, and to be collected, to the creditors on a *pro rata* basis. If you are unwilling to do this, this communication is intended as notice to you that we will apply to the Court on July 16, 1932, at 10 o'clock A. M., at Spartanburg, S. C., for an order directing such distribution on such basis, the application to be based on the entire record and this notice. We feel that this will be unnecessary because the complete fairness of equal treatment which is proposed affords little room for objection."

Apparently all the creditors did not consent. The application was made and resulted in the decree of July 16, 1932, from which this appeal is taken.

The objecting creditors were Dairy Products Company, Russell Manufacturing Company, Edwin Katzinger Company, National Paper Company, Randal Fuel Company, Malt Diastast Company, Hudson Manufacturing Company, National Aniline & Chemical Company, Star Box & Printing Company, S. Gumpert & Co., Inc., Chocolate Sales Company, Burris Mill & Elevator Company, Sherman Paper Products Company, and H. A. Bargeon.

Since July 16, 1932, the following creditors, who were then objectors, have consented to the *pro rata* distribution: Malt Diastast Company, National Aniline & Chemical Company, Chocolate Sales Company, and H. A. Bargeon.

The appellants are: Dairy Products Company, Russell Manufacturing Company, Randal Fuel Company, Edw. Katzinger Company, Foote & Jenks, Inc., National Paper Company, Star Box & Printing Company, Sherman Paper Products Company, and Burris Mill & Elevator Company.

There are four exceptions, but the sole question involved is this: Where the distribution of a fund in Court has been directed by a Circuit Judge, by a decree from which there has been no appeal, and under which creditors of one group are to be paid in full before creditors of another group participate, has another Circuit Judge power and authority at a later date, over the objection of some of the first group of creditors, by decree to change the mode of distribution fixed by the decree of the first Circuit Judge?

It is patent from an inspection of both decrees that that of Judge Sease dated July 16, 1932, materially changes the method of distribution fixed by that of Judge Shipp dated October 7, 1930.

We think he had no authority to do this. A prior order of one Circuit Judge may be aided and enforced by the order of another Circuit Judge, but the prior order may not be changed or modified by the latter order so as to substitute antagonistic terms and conditions.

For instance, in the case of *Barnwell v. Marion,* 62 S. C., 446, 40 S. E., 873, this Court held that an order of Judge Benet directing the resale of property which had been sold under an order of Judge Gage and the terms of sale not complied with was in furtherance of the enforcement of the terms of the order of Judge Gage, and was therefore not repugnant to it.

In *Porter v. Hydrick,* 134 S. C., 34, 131 S. E., 768, 771, it appears that Judge Efird had ordered the sale of mortgaged property, the terms to be cash. The property was bid off and the terms of sale were not complied with; Special Judge Carey, by a subsequent order, directed that $1,000.00

of the purchase price should be paid in by the successful bidder before closing the bidding. This Court held that the order of Judge Carey did not change the terms fixed by the order of Judge Efird, but was "an aid in carrying into effect the order of Judge Efird."

This Court has laid down definitely the rule that one Circuit Judge may not change or modify the order of another Circuit Judge.

It appears in *Middleton v. Ice & Fuel Company*, 97 S. C., 457, 81 S. E., 157, 158, that Judge Gary made a decree in the case confirming the report of the master which fixed the priority of liens, amount of attorney's fees, etc. The decree was made in term time, duly filed, and there was no appeal therefrom. Subsequently the resident Judge of that Circuit issued his decree modifying the decree of Judge Gary, and reducing the fee allowed attorneys. This Court on appeal said: "When the decree of Judge Gary was filed, any party to the action who felt aggrieved should have appealed from the decree, and, failing to do so, the cause becomes *res adjudicata,* on the ground that they are concluded by acquiescence in the decree of his Honor, Judge Gary, by failure to appeal therefrom.

"His Honor, Judge Rice, had neither power or authority to review, reverse, or modify the decree of Judge Gary"— citing authorities.

"Judge Rice had no power or jurisdiction at chambers, *without the consent of all parties* [italics added], to correct the judgment of a Court"—citing authorities.

This decision was quoted and followed in *Gray v. Lumber Co.,* 100 S. C., 87, 84 S. E., 410, 411, where it was said: "The plaintiff brought suit to declare all rights under the deed terminated. Those rights included the right to cut and remove the timber, and also the right of way. Judge Memminger, who heard that case, held 'that the plaintiff is not entitled to the relief prayed for and that the complaint be dismissed.' When therefore another Circuit Judge made

an order suspending the defendant's rights as declared by Judge Memminger's decree, it was unquestionably a modification of that decree."

Judge Spain's order was held to be invalid.

In *Barfield v. Barnes,* 108 S. C., 1, 93 S. E., 425, 428, this is found: "There is another reason why these orders cannot be sustained. A Judge at chambers cannot set aside, modify, or open a final judgment"—(citing the *Middleton case*). "Judge Mauldin's orders allow defendants to do what Judge Townsend had enjoined them not to do."

It is true that powers of Circuit Judges at chambers have been much enlarged since these cases were decided, but the enlarged powers do not embrace the power to review, reverse, or modify the order of another Circuit Judge.

It follows that Judge Sease was in error when he made the decree from which this appeal comes. But it does not follow that the decree is invalid as to all the parties to the action. It was sought, consented to, or acquiesced in by all of them except the named appellants herein. They objected to it, and they alone have appealed from it. They are not bound by it; all the others are, and as to them it is *res adjudicata.*

It is the judgment of the Court that the appellants are entitled to be paid their claims as directed by the decree of Judge Shipp of date October 7, 1930. To this extent the decree of Judge Sease, appealed from, is modified; in all other respects it is affirmed.

Mr. Chief Justice Blease and Messrs. Justices Stabler and Carter concur.