## 12431

### *EX PARTE* FLOYD
### PRUDENTIAL INSURANCE CO. OF AMERICA v. CARMON *ET AL.*

#### (142 S. E., 805)

1. MORTGAGES—FORECLOSURE OF MORTGAGE IS PROCEEDING IN EQUITY. —Foreclosure of a mortgage is a proceeding in equity.

2. MORTGAGES—TERMS OF MORTGAGE FORECLOSURE SALE ARE WITHIN CIRCUIT JUDGE'S DISCRETION, AND IT IS PROPER TO REQUIRE CASH DEPOSIT OF PART OF BID.—Terms of mortgage foreclosure sale are within discretion of Circuit Judge, and it is proper to require successful bidder to make cash deposit of a part of his bid.

3. MORTGAGES—DEPOSIT REQUIRED OF SUCCESSFUL BIDDER AT MORTGAGE FORECLOSURE SALE MUST BE REASONABLE.—Amount of deposit required of successful bidder at mortgage foreclosure sale must be reasonable, and must depend, to large extent, on exigency therefor.

4. MORTGAGES—SUCCESSFUL BIDDER AT MASTER'S MORTGAGE FORECLOSURE SALE HAS REASONABLE TIME TO INVESTIGATE TITLE, AND RESALE BEFORE SUCH TIME IS NULLITY.—Court may not require that successful bidder at mortgage foreclosure sale by Master comply with terms of sale before he has had reasonable time to investigate title, and a resale before he has had reasonable time to conduct such investigation is a nullity.

5. MORTGAGES—REQUIRING DEPOSIT OF SUCCESSFUL BIDDER AT MORTGAGE FORECLOSURE SALE WITHOUT STIPULATING IT WAS EARNEST MONEY WAS TO REQUIRE COMPLIANCE IN PART WITHOUT GIVING BIDDER TIME TO MAKE INVESTIGATION OF TITLE.—To require deposit from successful bidder at mortgage foreclosure sale without stipulating that it was to be earnest money, or evidence of good faith, was to require compliance with terms of sale in part without giving bidder time to which he was entitled to make investigation of title.

6. MORTGAGES—PROVISION OF MORTGAGE FORECLOSURE DECREE REQUIRING DEPOSIT FROM SUCCESSFUL BIDDER WAS NOT ESSENTIAL PART OF TERMS OF SALE.—Provision of decree for foreclosure of mortgage

and sale requiring deposit from successful bidder was not an essential part of terms of sale.

7. MORTGAGES—CASH DEPOSIT BY BIDDER, REQUIRED BY TERMS OF MORTGAGE FORECLOSURE DECREE, WAS FOR BENEFIT OF LIEN CREDITORS WHO WERE PARTIES TO ACTION.—Cash deposit by bidder, required by terms of decree for mortgage foreclosure and sale, was for benefit of lien creditors who were parties to action.

8. MORTGAGES—PARTIES TO MORTGAGE FORECLOSURE ACTION COULD WAIVE PROVISION OF DECREE FOR THEIR BENEFIT REQUIRING CASH DEPOSIT BY SUCCESSFUL BIDDER.—Parties to mortgage foreclosure action could waive provision for their benefit in decree for sale and foreclosure requiring cash deposit from successful bidder.

9. MORTGAGES—MASTER, CONDUCTING MORTGAGE FORECLOSURE SALE, AND ATTORNEYS OF RECORD, WERE OFFICERS OF COURT.—Master in Equity, conducting mortgage foreclosure sale, and attorneys of record, were all officers of Court.

10. MORTGAGES—MASTER, CONDUCTING MORTGAGE FORECLOSURE RESALE, BECAUSE DEPOSIT WAS NOT MADE AT FIRST SALE, COULD NOT BE REQUIRED TO CONVEY TO SUCCESSFUL BIDDER NOT MAKING DEPOSIT IMMEDIATELY AFTER RESALE.—Decree for mortgage foreclosure and sale required that cash deposit be made, and, if not made, that there should be resale at 4 o'clock, at which time sale deposit should be required. Successful bidder at first sale did not make deposit before 4 o'clock, and property was resold, subject to condition that bid would be accepted only if first purchaser failed to make required deposit by 12 o'clock on following day. Successful bidder at 4 o'clock sale did not make deposit until morning following sale, and first purchaser made deposit before 12 o'clock. *Held*, that Master could not be required to convey to purchaser at resale, since he did not make deposit immediately following sale as required; no time being specified for deposit.

11. MORTGAGES—BID OF PURCHASER AT CONDITIONAL RESALE ON MORTGAGE FORECLOSURE WAS NEVER ACCEPTED, WHERE PURCHASER AT FIRST SALE MADE DEPOSIT WITHIN TIME SPECIFIED, AND THE FORMER COULD NOT COMPEL MASTER TO CONVEY TO HIM.—Decree for mortgage foreclosure and sale required that cash deposit be made, and, if not made, that there should be resale at 4 o'clock, at which sale deposit should be required. Successful bidder at first sale did not make deposit before 4 o'clock, and property was resold subject to condition that bid would be accepted only if first purchaser failed to make required deposit by 12 o'clock on following day. *Held* that, where bidder at first sale made deposit by 12 o'clock on fol-

lowing day, bid at resale was never accepted, and there was no resale, so that bidder at resale could not compel Master to convey property to him.

Before Shipp, J., Florence, December, 1926. Reversed and rendered.

Action for foreclosure of a mortgage by the Prudential Insurance Company of America against Frances L. Carmon and others. A decree for foreclosure and sale was rendered, and H. A. Brunson, Master in Equity for Florence County, conducted the sale, at which Philip H. Arrowsmith was the last and highest bidder. The cash deposit was not paid within the time specified in decree, and the property was resold conditionally to S. R. Floyd. Mr. Arrowsmith later paid deposit and the master refused to convey to either Arrowsmith or Floyd, and Floyd obtained rule to show cause why the Master should not be required to deliver deed. From an order directing the Master to convey the premises to Floyd, the Master and others appeal. Reversed and rendered.

The statement, order of the Judge, and exceptions to the order referred to in the opinion are as follows:

## STATEMENT

This action was commenced for the foreclosure of a mortgage by the Prudential Insurance Company against Frances L. Carmon, W. H. Carmon, Eliza Carmon, J. P. Carmon, and M. B. Carmon, as mortgagors, and against George M. McCown, D. E. Ellerbe, as Receiver, Darlington Guano Company, American Agricultural Chemical Company, and Southern Bond & Mortgage Company, as junior lienholders. The proceeding resulted in a decree for sale and foreclosure, in which decree there was contained the following provision:

"It is further ordered, adjudged, and decreed that the mortgaged premises hereinbelow described be sold at public auction by H. A. Brunson, Esq., Master, at the courthouse in Florence County, S. C., on the first Monday in December,

1926, to the highest bidder for cash; that the said Master do execute to the said purchaser at such sale a good and sufficient deed to the premises so sold; that the purchaser at such sale shall forthwith deposit with the said Master a certified check, or cash, in the sum of $500; that, in case the said purchaser shall fail to make the deposit of $500 as aforesaid before 4 o'clock p. m. of the day of such sale, then the said Master shall resell the said premises at 4 o'clock p. m. on the said first Monday in December, 1926, at the risk of the first purchaser, and without the further order of this Court, the provision as to the deposit of $500 to be applicable to the said 4 o'clock p. m. sale; that the proceeds of such sale, after deducting the amount of his fees, and other costs incident to such proceeding, including taxes and assessments, due and payable, and the sum of $300 as attorney's fees for plaintiff's attorney, be applied by the said Master to the mortgage debt of the plaintiff herein; and that the surplus, if any, be paid to the defendants and as their interests may appear, reference to be had to the priorities of liens shown in the Master's report."

The Master advertised the property for sale in conformity with the provisions of the decree, and pursuant thereto offered the same at public auction, to the highest bidder, in front of the courthouse door at Florence on salesday in December, 1926, at which sale Philip H. Arrowsmith, Esq., was the last and highest bidder at $7,350.

There were a great number of sales conducted by the Master on that day, and it was some time after 2 o'clock before the bid was completed on this parcel of land. The United States Court was in session at Florence at the same time, and Mr. Arrowsmith was engaged in the trial of a case before that Court. Immediately upon the conclusion of this sale he was called into the trial, and so continued until 6 o'clock in the afternoon, at which time the Master's office had closed, and on the following morning resumed the trial

of the case, which was not concluded until about 5 minutes to 12 on the following day.

During the afternoon of Monday, Mr. Arrowsmith, not being able to leave the Federal Court to attend to this matter, sent word to the Master not to do anything until he (Mr. Arrowsmith) could get to his office.

Upon receipt of this message, the Master conferred with the plaintiff's attorney, Mr. J. P. McNeill, Jr., and it was decided that, since the provision of the decree requiring deposit had been inserted for the benefit of the plaintiff, the plaintiff, through its counsel, might waive it, and therefore it was decided by the Master and the plaintiff's counsel that the property would be offered for sale at 4 o'clock under the terms of the decree, but with the announcement made by both plaintiff's attorney and the master prior thereto that the bid would be accepted contingent upon Mr. Arrowsmith making deposit by 12 o'clock noon of Tuesday.

When this announcement was made, Floyd, the petitioner, and his associate, Truluck, protested against the sale being held in the manner announced by the Master, and notified the Master that they would bid on the property, if the successful bidder would require a compliance by the Master with the terms of the decree. Following this notice, the Master proceeded to sell the property at the 4 o'clock sale, and Mr. Truluck was the successful bidder for the sum of $5,900. At the afternoon sale, Mr. Truluck and Mr. J. P. McNeill, Jr., attorney for plaintiff, were the bidders for the property. On the completion of the sale by the Master, Mr. Floyd, the assignee of the Truluck bid, went to the office of the Master, and tendered him a cashier's check for $500, which was accepted by the Master without reservations. No mention being made by the Master that the $500 check deposited by Mr. Floyd would be held until Mr. Arrowsmith could comply by 12 o'clock on the following day with his bid. At or before noon on the following day, Mr. Arrowsmith posted his certified check for $500, and, both Mr. Arrowsmith and Mr.

Floyd demanding deeds, the Master refused to convey to either, whereupon the petitioner obtained a rule to show cause herein, which was served on the Master, who made return and appeared in person, and through Mr. Arrowsmith the matter was submitted to the Circuit Judge, who passed an order directing the Master to convey the premises to Floyd, from which order this appeal is taken.

## Order

The above matter comes before me under a rule to show cause issued out of this Court on December 9, 1926, directing H. A. Brunson, Master for Florence County, to show cause before me on December 14, 1926, why he should not be required to execute and deliver to S. R. Floyd, petitioner, a deed for certain premises described in the petition attached to the rule.

On the date designated, the Master made his return, and certain of the defendants appeared through their counsel, P. H. Arrowsmith, Esq., to contest the attempt to require the Master to execute the deed. From the Master's return, it will be observed that all of the facts alleged in the petition are admitted, making it unnecessary to set them out here, and the only question presented is, "Can the Master vary the terms of the decree prescribing the method of sale?"

This quotation from the decree forms the basis of the controversy: "That the purchaser at such sale shall forthwith deposit with the said Master a certified check or cash, in the sum of $500, that in case the said purchaser shall fail to make the deposit of $500, as aforesaid, before 4 o'clock p. m., on the day of such sale, then the said Master shall resell the said premises at 4 o'clock p. m., on said first Monday in December, 1926, at the risk of the first purchaser, and without the further order of this Court; the provision as to the deposit of $500 to be applicable to the said 4 o'clock p. m. sale."

The property was advertised to be sold in accordance with the terms of the decree. The bidding public had a right to expect that its terms would be observed, and there was no right to extend a special privilege to Mr. Arrowsmith by allowing him until 12 o'clock the following day to comply. This was contrary to the terms of the decree and a material variance.

Counsel for the Master raised the question that, since the decree does not provide a disposition of the $500 deposit, the Court was without jurisdiction in requiring such deposit. The decree in the case was with the consent of Mr. Arrowsmith, and all parties had notice of the provision. There can be no doubt that the Court can provide for the payment of a reasonable sum as earnest money or evidence of good faith on the part of the bidder, and no other interpretation could be placed on this requirement of the decree, except that the $500 paid in would be applied on the purchase price, or held to make up any deficiency from a resale, or upon good reason shown as to why he did not comply, returned to the bidder. There is nothing unreasonable in the requirement of the $500 deposit. It is for the benefit of all parties, and ofttimes necessary to expedite the business of the Court.

Numerous authorities have been cited by counsel for the Master as to the right of the Court to require an immediate compliance with the bid before a reasonable time has been allowed to investigate the title, but it does not appear that these authorities are in point on the question. In this State, the principle is clear that the Court must allow a reasonable time to investigate a title before compliance is made with the bid, but here there is no attempt to prevent an investigation of the title, but merely a precautionary provision is made to assure all parties that the bid is *bona fide*. After the deposit has been made, the bidder has ample time to make his investigation.

It is submitted that this proceeding is in the nature of a mandamus, and the action requested of the Court is addressed entirely to its discretion. That the action is in the nature of a mandamus is true, but the requiring of a ministerial officer of the Court to perform his duty in accordance with the terms of the decree is not addressed to the discretion of the Court, because it is the duty of the Court to require compliance by the ministerial officer with the orders in the case.

Again counsel contends that the Master having given notice at the 4 o'clock sale that the successful bidder at that sale would be the purchaser, provided Mr. Arrowsmith did not comply by 12 o'clock of the following day, gave the bidder notice and he bought under this condition. However, the bidder at this sale gave notive that he would bid and demand compliance with the decree, and, after this notice, he deposited with the Master the required cashier's check, which was retained. This was an apparent acceptance of the bidder's condition, and, further, the Master had no right to make the sale upon other conditions than provided in the decree.

On the hearing, it appeared that B. M. Truluck was the successful bidder at the 4 o'clock sale, but it was admitted that all parties understood that Mr. Truluck was bidding for the petitioner, S. R. Floyd. This understanding, it seems, would cure any defect from this point. However, the formal assignment by B. M. Truluck to S. R. Floyd which is included in the record and attached to the rule to show cause, eliminates any question in reference to the standing of the petitioner, for, if Mr. Truluck had been acting for himself, his assignment gives the petitioner all of his rights and interests in the matter.

I conclude that the requirement of a deposit of $500 in the decree is material and reasonable and that the Master could not at his instance, or that of plaintiff's attorney, vary this condition. It is, therefore, ordered that H. A. Brunson, Master for Florence County, and he is hereby directed to, make, execute, and deliver to S. R. Floyd, the petitioner, a

good and sufficient title in fee simple, to the premises described in the petition and decree, upon the payment by S. R. Floyd to the said master of the sum of $5,400, in addition to the $500 deposit already made.

## Exceptions

(1) It is respectfully submitted that his Honor erred in holding that the Master, at the direction of the plaintiff's counsel, was without power to vary the terms of the decree and grant the successful bidder on the first sale until 12 o'clock noon of the following day within which to make the initial compliance, whereas he should have held that this provision in the decree was intended solely for the benefit and protection of the plaintiff, and that the plaintiff, through counsel, might waive the same.

(2) It is respectfully submitted that his honor erred in not holding that the provision in the decree requiring an initial compliance by 4 o'clock on the date of the sale, without any provision for a refund in whole or in part, should there be a default in complying with the remainder of the purchase bid, because such provision deprived the bidder of a reasonable time within which to investigate the title.

(3) It is respectfully submitted that his Honor erred in holding that the Master, at the instance of the plaintiff's attorney, could not vary the terms of the decree, which terms were inserted for the protection and benefit of the plaintiff, while he, at the same time, proceeded to vary the same through an agreement by construction to the effect that, while the decree did not say or indicate that the initial deposit was required for earnest or good faith, such was its intention.

(4) It is respectfully submitted that his Honor erred, after concluding that the petition and rule was addressed to his discretion, being in the nature of a mandamus, that he had no discretion but to require conveyance by the Master to the petitioner, for the reason that the last and highest bidder on the judicial sale is not absolutely and of right

entitled to conveyance of the property, unless and until the same shall meet with the approval of the Court directing the sale.

(5) It is respectfully submitted that his Honor erred in not holding that, the bidder having purchased under the Master's notice, his bid was accepted conditionally, the condition being that the successful bidder on the first sale might have until noon of the following day within which to make the initial deposit, and, the first bidder having complied with his bid, being for a greater amount and the best interest of the parties to the action and to the Court, should have been confirmed.

(6) It is respectfully submitted that his Honor erred in not disregarding the protest of the bidder on the second sale and in holding that the acceptance of the bidder's deposit on the second sale constituted an acceptance and acquiescence in the bidder's protest.

(7) It is respectfully submitted that his Honor committed reversible error of law and abused the discretion vested in him in ordering the Master to convey to the petitioner upon compliance with his bid because the same is manifestly inequitable, unfair, and unjust to the debtor and creditor defendants.

*Mr. Philip H. Arrowsmith,* for appellants, cites: *To justify insertion in consent decree of foreclosure by Circuit Judge of provision requiring an absolute deposit as a condition to acceptance of the bid, there must have been some exigency:* 32 S. C., 598; 62 S. C., 446; 134 S. C., 34; 113 S. C., 365; 97 S. C., 242. *"Waiver":* 40 Cyc., 254. *Master agent for both parties to sale:* 2 Tr. C. Repts., 821. *"Mandamus":* 78 S. C., 384; 89 S. C., 472.

*Messrs. J. M. Truluck, P. H. McEachern,* and *D. Gordon Baker,* for respondent, cite: *Officer making a judicial sale has no power beyond that conferred by the order of Court which must be strictly followed:* 99 S. C., 115.

*Mr. J. P. McNeill, Jr.,* in brief filed *amicus curæ,* cites: *Rights which a party to litigation may waive:* 55 S. C., 446; 31 S. C. L., 10; 49 S. C., 560. *"Waiver":* 56 S. C., 48; 51 S. C., 317; 86 S. C., 586; 82 S. C., 40; 89 S. C., 111; 81 S. C., 214.

April 17, 1928.

The opinion of the Court was delivered by Mr. Justice Blease.

The appeal in this case is from an order of his Honor, S. W. G. Shipp, Circuit Judge, requiring the Master of Florence County to convey to the petitioner-respondent, S. R. Floyd, certain mortgaged premises sold by the said Master upon compliance by Floyd with the terms of sale. For a full understanding of the matters involved in the cause, it will be necessary to report the "statement," the order of Judge Shipp, and the exceptions to that order. In addition to the facts appearing in the "statement," other material facts are these: Mr. Arrowsmith, the successful bidder at the first sale of the lands, was attorney of record in the foreclosure proceedings for the mortgagor-defendants and for certain junior mortgagees; he was also mortgagee in the mortgage set up by D. E. Ellerbe, Esq., as Receiver, and he had personally guaranteed the payment of a mortgage executed to George McCown. The decree of foreclosure provided for the sale of the mortgaged premises and the payment of the plaintiff's judgment amounting to $4,369.60, and the retention of the surplus for distribution among the judgment creditors of the mortgagors.

We shall endeavor to pass properly upon all the exceptions without stating them separately.

1–3       The foreclosure of a mortgage is a proceeding in equity. The terms of sale are within the discretion of the Circuit Judge. It is proper to require the successful bidder to make a cash deposit of a part of his bid. 42 C. J., § 1831. *Hand v. Railway Co.,* 13 S. C., 467. *Tyer*

*v. Milling Co.,* 32 S. C., 598; 10 S. E., 1067.  *Barnwell v. Marion,* 62 S. C., 446; 40 S. E., 873.  *Porter v. Realty Co.,* 134 S. C., 34; 131 S. E., 768.  Such a deposit is a proper safeguard against spurious bidding upon the one hand and an aid in carrying into effect the terms of sale upon the other. But, as stated in *Hand v. Railway Co., supra:*

"Whatever convenience may result from possessing the means of eliminating spurious bids during the progress of the bidding may be counterbalanced by a tendency to deter parties from bidding, and thus chilling the bids."

We think it is not only proper, but a wise practice, to require a cash deposit to be made by the successful bidder upon the acceptance of his bid, but such deposit should be reasonable.  We think the tendency is toward providing too often for an unreasonable deposit, which cannot but operate to chill the bidding.  The amount of such deposit must depend, to a large extent, upon the exigency therefor.

It is well established in this State that the successful
4, 5  bidder at a Master's sale has a reasonable time to investigate the title to the property sold, and a resale before he has had a reasonable time to conduct such investigation is a nullity.  *Miller v. Goodwin,* 113 S. C., 365; 101 S. E., 834.  *Smith v. Smith,* 97 S. C., 242; 81 S. E., 499; 52 L. R. A. (N. S.), 751; Ann. Cas., 1916-C, 763.  Under the decisions mentioned, there seems to be no doubt but that the Court can require a reasonable deposit as "earnest" money, or as evidence of good faith on the part of the bidder.  But the Court may not require a compliance with the terms of sale before the successful bidder has had a reasonable time to investigate the title.  To require a deposit without stipulating that it is to be earnest money, or evidence of good faith, is to require a compliance in part without giving the bidder the time to which he is entitled to make his investigation of the title.

13—S. C. R.—145

In the case at bar, the terms of sale, as provided in the decree of foreclosure, required the payment of all the purchase price in cash. Undoubtedly, the Master was bound by these terms, and could make the sale upon no other terms. But the provision for the deposit was only a detail relating to the enforcement of the decree. It was not an essential part of the terms of sale.

It is settled in this State that an order requiring a deposit to be made upon a resale does not change the terms of sale provided in a former decree of foreclosure, which did not require the making of such deposit. *Porter v. Realty Co., supra.*

If one Circuit Judge may pass an order requiring a deposit without changing the terms of sale provided in a former decree, we see no reason why an order might not be passed eliminating from a former decree a provision requiring a deposit. Had an order, therefore, been passed at or before 4 o'clock p. m. of the day of sale, dispensing with the cash deposit, we think such an order would not have charged the terms of sale providing for the payment of the purchase price in cash. Had such an order, consented to by the attorneys of record, been presented to a Circuit Judge, who had jurisdiction of the matter, we do not doubt but that such order would have been passed, in view of the surrounding circumstances. As stated in the recent case of *Poole v. Bradham,* 143 S. C., 156; 141 S. E., 267, "no reason appears why the Court should not give effect now to what it would have done then."

Since the cash deposit, required by the terms of the decree, was intended to aid in effecting a compliance with those terms, such deposit was for the benefit of the lien creditors who are parties to the action. No person, other than the parties to the action, had any real interest in the matter, and had no vested right to have the mortgaged premises sold. It was of little, if any, concern to them if the

compliance was had within ten days or within any other stated period.

While, as indicated, the Circuit Judge correctly held that the Master is bound *by the terms of sale,* and may not vary the same, it does not necessarily follow that the parties to the action may not under proper circumstances waive a provision in the decree made for their especial benefit.

Parties to an action may, by agreement of counsel, waive a statutory provision. *Josey v. Burris,* 89 S. C., 111; 71 S. E., 469. That being true, we see no reason why they cannot waive a provision incorporated in a decree for their benefit.

In Ex Parte Hill, 55 S. C., 446; 33 S. E., 483, an action was commenced by a nonresident against a resident of this State. On motion of one of the defendants, the Circuit Judge granted an order requiring the plaintiff to deposit with the clerk of Court the sum of $100 within 60 days to cover whatever costs might be allowed against him, with the provision that, if the plaintiff failed so to do within the time specified, his complaint should be dismissed. The plaintiff failed to comply, and thereafter another Circuit Judge passed an order adjusting the rights of the parties. Thereupon the plaintiff in the suit moved to set aside the decree on the ground that the Court had no jurisdiction of the subject-matter, and that the succeeding Judge had no jurisdiction to overrule the order of his predecessor on the Circuit. The attorneys who made the motion for the order requiring the deposit submitted affidavit stating that they had waived said requirement, and went into the trial of the cause without having the plaintiff to make the required deposit. The Circuit Judge held that the attorneys had a right to waive their right to have the deposit made as required by the order of the Court. Upon appeal to this Court, the appellant relied solely upon the fact that the plaintiff failed to comply with the order requiring security for costs. To show that the Circuit Judge did not have jurisdiction of the case, this Court said:

"They, however, had the right to waive compliance with the requirement that the money should be deposited within the time mentioned in the order,"

—and cited as authority for the holding made *Garrett v. Niel,* 49 S. C., 560; 27 S. E., 512. *Fonville v. Richey,* 2 Rich., 10.

We think these authorities are conclusive of the proposition that the parties to an action may waive a provision in an order of Court incorporated for their benefit.

The decree of foreclosure herein provided, among other things, "that the mortgaged premises hereinbelow described be sold at public auction by H. A. Brunson, Esq., Master, at the courthouse in Florence County, S. C., on the first Monday in December, 1926, to the highest bidder for cash." Suppose for the moment that the Master had not sold said premises on said date, could the respondent or any one else not a party to the action be heard to complain? Notwithstanding this direction in the decree, could not the parties to the action have agreed to "call off the sale"? Had they done so, would respondent's rights have been invaded? This Court has held that the Master in the agent of both plaintiff and defendant. *Jenkins v. Hogg,* 2 Tread. Const., 821. The Master and the attorneys of record are all officers of the Court. The purpose of the Court in decreeing a foreclosure and ordering a sale was to benefit the parties to the action, and not to hurt them. To hold as did the Circuit Judge, that the parties to an action may not agree with the Master to waive a provision for the benefit of said parties, is to cling to a technicality. If, by waiving the provision for a deposit, a compliance with the terms of sale be rendered less likely, the parties to the action only are the ones to suffer. Others will not be heard to complain.

There is another reason why the order of the Circuit Judge cannot be affirmed. The decree of foreclosure provided that the provision for the cash deposit be applicable to the 4 o'clock sale. There was no deposit made at

that sale. The deposit was not made until some time before noon on the following day. If it was absolutely necessary that a deposit be made by the purchaser at the first sale before 4 o'clock of that day, then it was equally necessary that the purchaser at the second sale make the required deposit immediately. Otherwise it was wholly unnecessary to have a resale, for the manifest purpose of requiring the deposit and providing for the resale was to have in hand the deposit before 4 o'clock, or immediately thereafter. No time being specified for the deposit, it must have been intended to be made immediately upon the resale.

The respondent has in no sense been taken by surprise. He had an opportunity to purchase the mortgaged premises at the first sale, but failed to do so, presumably for the reason that the price was too high. When the second sale was had, proper announcement was made that the resale was being made conditionally; that the purchaser at the first sale had been given until 12 o'clock on the following day to make the required deposit, and the bid of the successful bidder at the resale would be accepted only in the event of failure on the part of the first purchaser to make the required deposit by that time. The required deposit having been made by 12 o'clock on the following day, the bid of the respondent's assignor was never accepted. There was no resale in fact; no contract between the parties.

To sustain the Circuit Judge would be to deprive the parties to the action of the difference between $7,350 and $5,900, and to give that difference to the respondent. This the Court cannot sanction.

For the reasons herein stated, it is the judgment of this Court that the order of the Circuit Judge be reversed, and that the Master execute and deliver to the purchaser at the first sale a good and sufficient deed to the mortgaged premises upon his complying fully with the terms of sale.

Mr. Chief Justice Watts and Messrs. Justices Cothran, Stabler and Carter concur.